Jason M. Ingber (SBN 318323)
**Ingber Law Group**
3580 Wilshire Blvd., Suite 1260
Los Angeles, California 90010
Telephone: (213) 805-8373
E-mail: ji@jasoningber.com

Attorneys for Plaintiff Cameron Beatty

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAMERON BEATTY, individually and on behalf of all others similarly situated<br><br>                    Plaintiff,<br><br>v.<br><br>SUNGAGE FINANCIAL, LLC, a Massachusetts limited liability company; NBT BANK, N.A., a New York Corporation; SUNMADE ENERGY, LLC, a California limited liability company; PG&E CORPORATION, a California Corporation, PACIFIC GAS & ELECTRIC COMPANY, a California Corporation, and DOES 1 through 50, inclusive,<br><br>                    Defendants. | CASE NO:<br><br>**CLASS ACTION COMPLAINT**<br><br>**(1) BREACH OF CONTRACT**<br>**(2) FRAUDULENT INDUCEMENT AND INTENTIONAL NON-DISCLOSURE**<br>**(3) VIOLATION OF THE TRUTH IN LENDING ACT (TILA), 15 U.S.C § 1601 ET SEQ.**<br>**(4) VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT, CAL. CIV. CODE § 1788.13(i)**<br>**(5) VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO), 18 U.S.C. §§ 1961-1968**<br><br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.    This case exposes a sophisticated financial fraud scheme targeting homeowners desperate to escape soaring electricity bills. Imagine being told you can finance solar panels with a "0% interest" loan that's "easily transferable" to any future home buyers—only to discover years later

that you've been charged over $20,000 in hidden fees and your loan is a trap that prevents you from selling your home. That's what happened to Plaintiff Cameron Beatty and thousands of other California homeowners who thought they were making a smart financial decision by switching to solar energy. The defendants—a network of solar financing companies, banks, and installers working in coordination with utility giant PG&E—have orchestrated a bait-and-switch operation that exploits federal tax incentives meant to encourage clean energy adoption. They lure customers with promises of no finance charges and transferable loans, but charge massive fees by inflating the total loan amount far beyond the actual cost of the solar equipment. When homeowners like Mr. Beatty try to sell their homes, they discover the cruel reality: potential buyers must qualify for entirely new loans at prohibitive interest rates, making the properties virtually unsellable. This systematic deception has trapped families in their homes, saddled them with fraudulent debt, and perverted a federal program designed to help the environment into a vehicle for corporate enrichment at taxpayers' expense.

2.    This is a class action by Plaintiff Cameron Beatty and homeowners defrauded in a solar power finance scheme led by Defendants Sungage Financial, LLC; NBT Bank, N.A.; and their authorized installers, and salespeople and PG & E.

3.    Defendants induce Plaintiffs into loans for residential solar energy systems with lies about the loan finance charges.

4.    Defendants' scheme opens with a lie that there are no transaction fees for the loan and that the loan is "easily transferable" to any home buyers, with promises by Sungage Financial on its website, that homeowners can "simply transfer [their] loan obligation to the new home buyer who will take over the loan payments when the home sale closes." Plaintiff even paid a "transfer fee" to ensure this ability to transfer, which is not possible.

5.    These "zero finance charges" and "easy transferability" representations are false and material to Plaintiffs' decisions to enter into solar financing agreements. Defendants require potential transferees to qualify for entirely new loans at substantially higher interest rates—set as the "current rate + 5.00% or 9.99% (whichever is less)"—and render the loans non-transferable and impair homeowners' ability to sell their homes.

6.    Defendants violate the Truth in Lending Act (TILA) with murky and false disclosures showing 0% annual percentage rates and no finance charges, while substantial loan proceeds portions—often $20,000+—as undisclosed finance charges and dealer fees paid to Defendants rather than for solar equipment or installation.

7.    As a result, Plaintiff and Class Members suffer financial harm, like inflated long-term debt, failed home sales, threats to their credit score, recorded liens on immovable fixtures to their homes based on fraudulent loans, and loss of tax credit benefits.

8.    This action seeks damages, restitution, rescission, lien expungement, and injunctive relief under federal and state law, to hold Defendants accountable for their systematic exploitation.

## **PARTIES**

9.    Plaintiff Cameron Beatty is a resident of Clovis, California.

10.    Defendant Sungage Financial, LLC ("Sungage") is a limited liability company organized under the laws of Massachusetts, with its principal place of business in Boston, Massachusetts. Sungage acts as the face of the loan/lender, originates and services solar financing nationwide, and makes material misrepresentations. Sungage offers finance products nationwide for residential solar panels and conducts business all over California.

11.    Defendant NBT BANK, N.A. ("NBT") is a national banking association headquartered in Norwich, New York. NBT Bank is the actual lender that funded Plaintiff's loan and recorded liens on Class Members' properties as part of the fraudulent conduct alleged herein.

12.    Defendant Sunamde Energy, LLC ("Sunmade Energy") is a limited liability company organized under the laws of California. Sunmade Energy acted as the panel dealer, was identified in Plaintiff's loan approval as the installer, and participates in the fraudulent scheme in coordination with Sungage Financial and NBT Bank.

13.    Defendant PG&E Corporation is an energy-based holding company headquartered in San Francisco, California.  It is the parent company of Defendant Pacific Gas & Electric Company.

14.     The true names and capacities of defendants sued herein as DOES 1 through 50 are unknown to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 as Plaintiff asserts claims under the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968.

16.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred in this District, and Defendants regularly conduct business in this district.

## GENERAL ALLEGATIONS

### Exploitation of the Federal Solar Tax Credit

18.     If a homeowner switches from electricity to solar panels, a homeowner will save about $2,000 a year.

19.     An incentive to switch to solar panels is a federal "solar tax credit" passed by Congress to boost residential solar panel system purchases.

20.     Congress recently increased the solar tax credit through 2032 in the Inflation Reduction Act and currently the One Big Beautiful Bill Act is in the Senate up for vote which will erase this solar tax credit.

21.     The solar tax credit is a benefit that's intended for the homeowner that is based on the costs and installation for the solar panels.

22.     Federal law prohibits any finance costs to be counted towards the solar tax credit, like interest, loan origination fees, and other finance charges.

### Defendants' Systematic Industry-Wide Deception

23.     Plaintiff faced electricity bills from PG&E exceeding $550 per month, with financial pressure that made them susceptible to Defendants' solar financing scheme.

- 4 -
**COMPLAINT**

24.     PG&E systematically drives up electricity costs to create desperate consumers.

25.     PG&E exploits consumers through a dual monopoly.

26.     PG&E has dual control over electricity rates *and* solar compensation (i.e. if someone switches to solar and generates extra electricity that can be routed back to the grid, PG&E has artificially lowered the value for the extra energy over time) and creates impossible economics that force consumers into predatory financing arrangements.

27.     PG&E lobbies to eliminate the favorable NEM 2.0 rates and create artificial deadlines that solar scammers exploit to pressure consumers into fraudulent loan agreements subsidized by federal taxpayers through the solar tax credit program.

28.     Defendants downstream of the scam target homeowners with high electricity costs through coordinated marketing at public venues.

29.     Plaintiff and his family moved from Glendale, California to Fresno, California in August 2020, and purchase their home in summer 2021.

30.     Plaintiff, like most people in the world then worked from home year-round, living with his four children, and a plug-in hybrid electric vehicle.

31.     In early 2022, Plaintiff attends the annual Fresno Home & Garden show to explore alternatives to his high electricity bill, where Defendants market their solar financing services as solutions to high electricity costs.

32.     At a booth the Defendants strike a connection with Plaintiff and agree to send a salesperson to his house to further discuss options for solar panels and financing and agree to send their salesperson Matt Harr to Plaintiff's house.

33.     Following initial contact at the home and garden show, Defendants' representatives persistently contacted Plaintiff to secure this in-person sales presentation at his home with Matt Harr, as part of Defendants' systematic practice of using high-pressure, in-person sales tactics to close financing deals.

34.     When Plaintiff sought competitive quotes from multiple solar companies, he discovered that virtually all solar financing companies employ substantially identical deceptive

practices, including one company that quoted "well over $100,000" for a similar system, and all companies focusing on artificially low interest rates while deliberately obscuring actual system costs.

35.    Based on information and belief, Defendants' deceptive practices represent an industry-wide pattern affecting the entire solar financing market. This industry-wide deception systematically prevents consumers from understanding actual solar system costs, as Plaintiff discovered that no solar company would provide transparent pricing showing "this panel costs $400 a panel and it costs this much to install"—instead, all companies present only inflated total prices combined with artificially low interest rate financing.

**Defendants' Tax Credit-Based Fraudulent Scheme**

36.    Defendants design their solar loan products specifically around the federal solar tax credit program, structuring loans with the expectation that customers receive their tax credit and use it to make a large lump-sum payment (the "tax-credit payment") to defendants within 18 months after installation.

37.    To maintain artificially low monthly payments throughout the loan term (typically 10 to 30 years), Defendants' loan products require customers to make the tax-credit payment within the specified period or face sharp increases in monthly payments through loan re-amortization.

**False Representations Regarding Loan Transferability**

38.    Sungage represented—both directly through its representatives and prominently on its website—that Plaintiff's solar loan would be "easily transferable" to any future home buyer.

39.    Matt Harr, the Sungage representative who identified himself as a "solar educator," explicitly told Plaintiff that the loan could be transferred to the next person for the exact same payment plan that Plaintiff had, meaning any buyer could assume the loan under identical terms without modification.

40.    These oral representations by Matt Harr were corroborated on Sungage's website, which stated that homeowners with Sungage loans could "simply transfer [their] loan obligation to the new home buyer who will take over the loan payments when the home sale closes."

41. Sungage emphasized through both its representative Matt Harr and its website that this transferability feature provided "piece of mind" and "flexibility when a homeowner needs to move."

42. These transferability representations—made both orally by Matt Harr and in writing on Sungage's website—were material to Plaintiff's decision to proceed with the loan. Plaintiff would not have entered into the loan agreement without the ability to transfer it to future buyers under the exact same payment terms.

**False TILA Disclosures and Tax Credit Deception**

43. Sungage provided Plaintiff with Truth in Lending Act (TILA) disclosure statements representing that: a. The loan had a 0% annual percentage rate for both the "interest" and "zero interest" portions; b. There were no finance charges associated with the loan; c. The entire loan amount would be applied to the cost of solar equipment and installation.

44. These representations are false.

45. Federal law prohibits counting finance charges toward the solar tax credit, meaning Plaintiff could only claim the credit on actual system costs, not on the disguised finance charges included in his loan amount.  Yet Defendants required Plaintiff to declare the undisclosed finance charge as part of the cost of the solar system to inflate the tax credit benefit to him.

46. Plaintiff relied on these TILA disclosures and tax credit representations in deciding to enter into the loan agreement.

**Plaintiff's Discovery of Systematic Cost Concealment**

47. During the sales process, Plaintiff became frustrated by his inability to determine actual system costs, as Matt Harr and other solar company representatives uniformly refused to provide transparent cost breakdowns showing individual component prices and installation costs.

48. In  an effort to understand actual system costs and compare competitive options, Plaintiff specifically requested the cash price for the entire solar system from Matt Harr and other solar companies.

49.    On March 31, 2022, Matt Harr responded to Plaintiff's cash price inquiry by email, stating that the cash price for the entire solar system is $63,000.

50.    This email response confirmed that the actual system cost was $63,000, while simultaneously revealing that Defendants were financing the system for $82,136.04.

51.    Plaintiff discovered that, contrary to the TILA disclosures showing 0% APR and no finance charges, a substantial portion of his loan proceeds—approximately $20,000 of the total $82,136.04 loan amount—is an undisclosed finance charge paid to Sungage rather than applied to solar equipment or installation.

52.    Critically, these hidden fees are deliberately not represented as pure finance charges on the face of the contract, and are mischaracterized to conceal their true nature from consumers and avoid proper TILA disclosure requirements.

53.    These hidden charges were neither properly disclosed in the loan documents nor reflected in the solar system's actual value or performance, constituting a clear violation of TILA's disclosure requirements and demonstrating the fraudulent nature of Defendants' scheme to deliberately conceal the true cost of credit while exploiting the federal solar tax credit program.

54.    The systematic nature of this deception is further evidenced by Defendants' coordinated practice of preventing consumers from discovering actual system costs through industry-wide refusal to provide transparent pricing breakdowns, forcing consumers to rely on the false financing representations.

55.    Plaintiff went through with the loan because he negotiated a zero percent financing term so even though the deal was dubious the free loan and long term benefits to the home to switching to solar and saving electricity costs made it seem worthwhile.

### Discovery of the Fraudulent Scheme That Prevents Home Sales

56.    In 2024, when Plaintiff attempted to sell his home, he discovered that Sungage's representations regarding the transferability were false.

57.    As mentioned, regarding loan transferability, Sungage informed Plaintiff that any potential buyer would be required to qualify for an entirely new loan at an interest rate of the "current rate + 5.00% or 9.99% (whichever is less)"—a rate so high that no home buyer would agree.

58.    This directly contradicts Matt Harr's explicit representation that buyers could transfer the loan "for the exact same payment plan" and Sungage's website representation that buyers could "take over the loan payments when the home sale closes."

59.    This rendered the loan functionally non-transferable, directly contradicting both the oral representations made by Matt Harr and Sungage's prominent website representations and oral assurances.

60.    Plaintiff wants to move with his family and sell his home.  On more than one occasion, including on or about April 29, 2025, Plaintiff entered into a purchase agreement to sell his home at 2102 Alamos Ave., Clovis, CA 93611 to a couple of home buyers.

61.    The buyers were interested in purchasing the property but became concerned about the solar loan's transferability terms.

62.    On May 9, 2025, the buyers exercised their right to cancel the purchase agreement, citing their inability to assume the solar loan under reasonable terms as permitted under the good faith exercise of contractual contingencies.

63.    This cancellation directly results from Defendants' false representations regarding loan transferability, causing Plaintiff concrete financial harm and preventing the sale of his home.

**The RICO Enterprise**

64.    Defendants Sungage Financial, LLC, NBT Bank, N.A., and Sunmade Energy, LLC are a group of persons constituting an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) (referred to hereinafter as the "Enterprise"), because, among other reasons: (a) those involved have the common purpose to unlawfully operate an ongoing criminal enterprise engaged in fraudulent billing; (b) the Enterprise has an informal governing structure that at certain times operates as a command hierarchy led by Defendants Pacific Gas & Electric Company, Sunmade Energy and NBT Bank, different roles for members, and a governing set of rules and practices and with PG&E creating the foundational conditions of consumer financial distress through rate

manipulation and solar compensation control; (c) each of the Defendants participates in the operation or management of the Enterprise; (d) the Enterprise has enjoyed sufficient longevity and has been in continuous operation for over five years; and (e) the Enterprise has generally been structured to operate as a continuing unit, with membership, rank, privileges, and access constantly maintained by the members, to accomplish the goals of the fraudulent loaning and tax credit scheme.

65.     The Enterprise has operated through interstate commerce by PG&E's multi-state utility operations and lobbying efforts, solar financing defendants marketing across state lines, using mail and wire communications to process loan applications influenced by PG&E's rate policies, and recording liens on properties in multiple jurisdictions based on financing schemes enabled by PG&E's market manipulation.

66.     The Enterprise operates through a pattern of racketeering activity including mail fraud, wire fraud, and other predicate acts designed to defraud consumers through misrepresentations about solar loan terms, transferability, finance charges, and federal tax credit benefits.

**Pattern of Deceptive Conduct**

67.     Defendant Pacific Gas & Electric Company holds a dual monopoly on electricity pricing to homeowners and a monopoly on how much solar power benefits homeowners.  This forces homeowners into predatory loans for solar panels.  The email evidence revealing the true cash price of $63,000 versus the loan amount of $82,136.04 discloses that Defendants systematically inflate loan amounts to include substantial undisclosed finance charges and fees unrelated to the actual solar project costs, while disguising these charges on the face of the contract to avoid proper TILA disclosures and to fraudulently inflate the basis for federal tax credit calculations.

68.     Defendants' deceptive practices are not isolated to Plaintiff but represent a systematic scheme affecting thousands of similarly situated homeowners nationwide, where loan amounts consistently exceed actual project costs by tens of thousands of dollars while finance charges are deliberately mischaracterized and concealed, resulting in widespread loss of federal tax credit benefits.

69.     Defendants structure their solar financing program with misrepresentations— including specific oral promises by representatives like Matt Harr about loan transferability, and

website representations corroborating these false promises, and deliberate concealment of finance charges on loan documents, and exploitation of the federal solar tax credit program—to induce consumers into agreements they would otherwise reject.

70.    The systematic nature of this scheme is evidenced by Defendants' uniform practice of: (a) providing 0% APR TILA disclosures while simultaneously diverting substantial loan proceeds as undisclosed finance charges; (b) making identical transferability representations through both sales representatives and website content; (c) deliberately disguising finance charges on contract faces to avoid regulatory scrutiny; and (d) structuring loans around federal tax credit timing while concealing that disguised finance charges do not qualify for tax credit benefits, creating a comprehensive pattern of deception designed to mislead consumers about both the true cost of their solar financing and the transferability of their loans.

71.    As a result of this scheme, Plaintiff has suffered damages including the failed home sale, legal expenses, impaired marketability of his property, and continuing obligation under a fraudulent loan agreement that charges him nearly $20,000 more than the actual project cost while preventing him from transferring the loan as promised by Matt Harr and Sungage's website.

## CLASS ALLEGATIONS

72.    Plaintiff brings this action on behalf of himself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

73.    The proposed class is defined as: **All individuals in the United States who, from 2018 to the present:** a. Entered into solar financing agreements with Sungage Financial, LLC and/or NBT Bank, N.A.; b. Received TILA disclosure statements showing 0% annual percentage rates and/or no finance charges while substantial portions of loan proceeds were diverted as undisclosed finance charges; c. Had loan amounts that exceed the actual cash price of their solar projects by more than $10,000; d. Had UCC-1 Financing Statements or other liens recorded against their property as a result of such transactions.

74.    Plaintiff reserves the right to amend the class definition based on information obtained through discovery.

**COMPLAINT**

75. **Numerosity**: The class is so numerous that joinder of all members is impracticable. Based on information and belief, Defendants have originated thousands of solar loans using the deceptive practices described herein.

76. **Commonality and Predominance**: Common questions of law and fact predominate over individual issues, including: a. Whether Defendant Pacific Gas & Electric Company has a dual monopoly that creates this market for fraudulent loans; b. Defendants violated TILA by providing false disclosures while charging undisclosed finance charges; c. Whether Defendants systematically inflated loan amounts beyond actual project costs; d. Whether Defendants defrauded consumers regarding federal solar tax credit benefits by disguising finance charges as eligible system costs; e. Whether Defendants breached their contracts by failing to provide transferable loans; f. Whether Defendants' conduct was fraudulent and deceptive.

77. **Typicality**: Plaintiff's claims are typical of the class because he, like all class members, was subjected to Defendants' uniform deceptive practices regarding loan transferability, false TILA disclosures, inflated loan amounts exceeding actual project costs, and misrepresentations about federal tax credit eligibility.

78. **Adequacy**: Plaintiff will fairly and adequately represent the interests of the class and has retained competent counsel experienced in class action litigation.

79. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual actions would be impracticable given the relatively small individual damages compared to the cost of litigation.

**FIRST CAUSE OF ACTION**

**Breach of Contract**

**(Against All Defendants)**

80. Plaintiff incorporates by reference each preceding paragraph.

81. Plaintiff entered into written contracts with Defendants, including the solar loan agreement, TILA disclosure statements, and associated documentation governing the financing and installation of the solar energy system.

82.    These contracts contained express material terms, including: a. That the loan would be "easily transferable" to future home buyers who could "take over the loan payments"; b. That the loan carried a 0% annual percentage rate with no finance charges; c. That the loan proceeds would be applied to solar equipment and installation costs.

83.    These terms were documented in Defendants' written materials, website representations, and oral communications, and were material inducements for Plaintiff's agreement to the contracts.

84.    Plaintiff fully performed his obligations under the contracts.

85.    Defendants materially breached the contracts by: a. Failing to provide a transferable loan, instead requiring potential transferees to qualify for new loans at substantially higher rates; b. Diverting $20,000 of loan proceeds as undisclosed finance charges rather than applying the full amount to solar costs; c. Providing false TILA disclosures misrepresenting the loan's APR and finance charges.

86.    These breaches have caused Plaintiff damages including the failed home sale, ongoing obligation under fraudulent loan terms, and impaired property marketability.

87.    Plaintiff seeks damages, restitution, and declaratory relief for Defendants' breach of contract.

## SECOND CAUSE OF ACTION

### Fraudulent Inducement and Intentional Non-Disclosure

### (Against All Defendants)

88.    Plaintiff realleges and incorporates by reference each and every preceding paragraph.

89.    Defendants made material misrepresentations to induce Plaintiff into the solar loan agreement, including: a. That the loan would be "easily transferable" with buyers able to "take over the loan payments"; b. That the loan carried 0% APR with no finance charges; c. That the full loan amount would be applied to solar equipment and installation.

90.    Defendants also intentionally concealed material facts, including: a. That loan "transferability" actually required new loan applications at rates of "current rate + 5.00% or 9.99%";

**COMPLAINT**

b. That $20,000 of the loan would be diverted as finance charges to Defendants; c. That the loan terms would impair Plaintiff's ability to sell his home.

91.    These misrepresentations and omissions were material to Plaintiff's decision and were made with knowledge of their falsity or reckless disregard for the truth.

92.    Plaintiff reasonably relied on these representations, as evidenced by his agreement to the loan and subsequent attempt to transfer it during his home sale.

93.    As a direct result, Plaintiff suffered damages including the failed home sale, legal expenses, and ongoing financial obligations under the fraudulent loan.

94.    Plaintiff seeks compensatory damages, punitive damages, and equitable relief for Defendants' fraudulent conduct.

### THIRD CAUSE OF ACTION
### Violation of the Truth in Lending Act (TILA) 15 U.S.C. §§ 1601–1667
### (Against Sungage Financial and NBT)

95.    Plaintiff realleges and incorporates by reference each preceding paragraph.

96.    TILA requires creditors to provide clear and accurate disclosures of credit terms, including the annual percentage rate, finance charges, and amount financed.

97.    Defendants Sungage Financial and NBT Bank were "creditors" subject to TILA as the entities originating and funding consumer credit.

98.    Defendants violated TILA by: a. Falsely disclosing a 0% annual percentage rate when substantial finance charges were included; b. Failing to disclose $20,000 in finance charges diverted to Defendants; c. Misrepresenting the true amount financed for solar equipment and installation.

99.    These violations prevented Plaintiff from making informed credit decisions and directly caused his entry into the fraudulent loan agreement.

100.    Plaintiff seeks statutory damages under 15 U.S.C. § 1640, actual damages, attorney fees, and rescission of the loan agreement.

### FOURTH CAUSE OF ACTION
### Violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.13(i)
### (Against NBT Bank)

101.    Plaintiff realleges and incorporates by reference each preceding paragraph.

102.    The Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), California Civil Code section 1788 et seq., prohibits debt collectors from engaging in unfair or deceptive practices in the collection of consumer debts.

103.    Defendant is a "debt collector" within the meaning of the Rosenthal Act because they regularly collect or attempt to collect consumer debts owed to themselves or others, including the solar loan debt at issue in this action.

104.    The solar loan constitutes a "debt" within the meaning of the Rosenthal Act as it arises from a consumer credit transaction for personal, family, or household purposes.

105.    Defendants violated California Civil Code section 1788.13(i) by falsely representing the true nature of the business or services being rendered as debt collectors.

106.    Specifically, Defendant misrepresents themselves as legitimate solar financing companies offering beneficial loan terms when, in reality, they were operating a deceptive scheme designed to: a. Extract excessive and undisclosed finance charges from consumers—approximately $19,136.04 more than the actual project cost as evidenced by the $63,000 cash price versus $82,136.04 loan amount—while deliberately not representing these as pure finance charges on the contract face; b. Make false promises about loan transferability through their agents; c. Saddle homeowners with non-transferable loans that impair property marketability; d. Generate profits through coordinated misrepresentations about loan terms and transferability while providing fraudulent TILA disclosures.

107.    Defendant's false representations about the nature of their business and services—including specific promises by its agent Sungage about transferability and the deliberate concealment of finance charges—were material to consumers' decisions to enter into the solar loan agreements.

108.    As a direct and proximate result of Defendants' violations of the Rosenthal Act, Plaintiff has suffered actual damages including economic harm from the failed home sale, legal expenses, and ongoing obligation under the deceptive loan terms that charge nearly $20,000 more than the actual project cost while preventing the transferability specifically promised by Matt Harr.

**COMPLAINT**

109.    Plaintiff seeks actual damages, statutory damages up to $1,000 per violation, attorney fees, and costs under the Rosenthal Act.

**FIFTH CAUSE OF ACTION**

**Violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. §§ 1961-1968**

**(Against Sungage Financial, NBT Bank, and Sunmade Energy)**

110.    Plaintiff realleges and incorporates by reference each preceding paragraph.

111.    Defendants Sungage Financial, LLC, NBT Bank, N.A., and Sunmade Energy, LLC and PG&E Corporation are a group of persons constituting an association-in-fact enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c) (referred to hereinafter as the "Enterprise"), because, among other reasons: (a) those involved have the common purpose to unlawfully operate an ongoing criminal enterprise engaged in fraudulent loans and billing; (b) the Enterprise has an informal governing structure that at certain times operates as a command hierarchy led by Defendants Sunmade Energy and NBT Bank, different roles for members, and a governing set of rules and practices; (c) each of the Defendants participates in the operation or management of the Enterprise; (d) the Enterprise has enjoyed sufficient longevity and has been in continuous operation for over five years; and (e) the Enterprise has generally been structured to operate as a continuing unit, with membership, rank, privileges, and access constantly maintained by the members, to accomplish the goals of the fraudulent loaning scheme.

112.    The Enterprise has operated through interstate commerce by marketing solar financing across state lines, using mail and wire communications to process loan applications, and recording liens on properties or property fixtures in multiple jurisdictions.  The Enterprise leverages the backdrop created by Defendant Pacific Gas and Electric's chokehold on homeowners for both electricity pricing and excess solar value which creates financial distress and vulnerability created by PG&E's artificially inflated electricity rates exceeding $550 per month, which rendered Plaintiff susceptible to the solar financing defendants' fraudulent loan scheme.

113.    Defendants conducted the affairs of the Enterprise through a pattern of racketeering activity consisting of multiple predicate acts, including: a. **Mail Fraud** (18 U.S.C. § 1341): Defendants used the U.S. mail to send fraudulent loan documents containing deliberately disguised

finance charges, TILA disclosures showing 0% APR and no finance charges while actually charging approximately $20,000 in undisclosed fees, and marketing materials containing false representations about loan transferability corroborated by coordinated website content; b. **Wire Fraud** (18 U.S.C. § 1343): Defendants used interstate wire communications, including electronic transmissions and internet communications, to disseminate false information about loan terms through representatives like Matt Harr making specific promises about transferability "for the exact same payment plan" and to process fraudulent loan applications while concealing the true nature of finance charges on contract faces; c. **Money Laundering** (18 U.S.C. § 1956): Defendants engaged in financial transactions involving proceeds from their fraudulent solar loan scheme, including the approximately $19,136.04 in undisclosed fees per loan that were deliberately disguised and not represented as pure finance charges, knowing that the transactions were designed to conceal the nature and source of the unlawfully obtained funds.

114.    Each predicate act was committed in furtherance of the common scheme to defraud consumers through coordinated misrepresentations about solar loan terms—including specific oral promises by representatives like Matt Harr, website corroboration of these false promises, and deliberate disguising of finance charges on contract documents—and each act was related to the Enterprise's fraudulent activities designed to systematically overcharge consumers by tens of thousands of dollars per loan.

115.    The pattern of racketeering activity spans multiple years and involves numerous victims across multiple states, with each victim being overcharged by substantial amounts through the systematic use of disguised finance charges and false transferability promises made through coordinated oral and written representations.

116.    Defendants' racketeering activities were conducted through the Enterprise and directly caused injury to Plaintiff's business and property, including: a. The failed home sale resulting in lost profits and opportunity costs due to the non-transferable loan contrary to Matt Harr's specific promises; b. Ongoing obligation under fraudulent loan terms that charge approximately $19,136.04 more than the actual project cost through deliberately disguised finance charges; c. Impaired

marketability of Plaintiff's property due to the functionally non-transferable loan; d. Legal expenses incurred to address the fraudulent loan and concealed finance charges.

117.    Plaintiff's injuries were proximately caused by Defendants' racketeering activities and would not have occurred but for the Enterprise's fraudulent scheme to systematically overcharge consumers through disguised finance charges while making coordinated false promises about loan transferability through representatives like Matt Harr and corroborating website content.

118.    Under 18 U.S.C. § 1964(c), Plaintiff seeks treble damages, attorney fees, and costs for Defendants' RICO violations.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

1.  Certification of proposed class under Rule 23;
2.  Actual damages including lost profits from the failed home sale, legal expenses, and other economic harm;
3.  Statutory damages under TILA;
4.  Statutory damages under the Rosenthal Fair Debt Collection Practices Act up to $1,000 per violation;
5.  Treble damages under RICO for Defendants' racketeering activities;
6.  Rescission of the fraudulent loan agreements and removal of recorded liens;
7.  Punitive damages for Defendants' willful and fraudulent conduct;
8.  Reasonable attorney fees and costs under TILA, the Rosenthal Act, and RICO;
9.  Injunctive relief prohibiting Defendants' deceptive practices;
10. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

**Plaintiff** hereby request a trial by jury on all causes of action so triable.

Dated:  May 29, 2025                    INGBER LAW GROUP

                                        _/s/ Jason M. Ingber_
                                        Jason M. Ingber, Esq. (SBN 318323)
                                        Attorney for Plaintiff

- 18 -
**COMPLAINT**